UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLIED WORLD INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION H-17-3608 |
| AMERICAN WESTERN STEEL, LLC, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Allied World Insurance Company's motion for summary judgment. Dkt. 21. Defendants American Western Steel, LLC and Michael Joseph Vivian ("Defendants") responded. Dkt. 23. Allied World replied. Dkt. 24. After considering the motion, response, reply, record, and applicable law, the court is of the opinion that Allied World's motion for summary judgment (Dkt. 21) should be GRANTED.

**I. BACKGROUND**

This suit arises from an indemnity agreement between Allied World and Defendants. Dkt. 1. Defendants approached Allied World seeking payment and performance bonds in connection with Defendants' construction projects. *Id.* at 3. Allied World required indemnity in order to issue the surety bonds. *Id.* Defendants signed an indemnity agreement providing:

> Each Indemnitor hereby agrees and convenants with the Surety . . . at all times jointly and severally to exonerate, indemnify and keep indemnified, and to defend and to hold Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not Surety has actually made any payment thereon as of such Due Date.

Dkt. 6-2 at 3. Defendants' indemnity obligation included court costs and attorneys' fees. *Id.* Further, the agreement provided that Allied World had the exclusive right to settle claims:

> Surety shall have the exclusive right in its name or in the name of Principal and all Indemnitors to adjust, settle, or compromise any Claim, counterclaim, demand, suit or judgment involving any Bond or to take whatever other action it may deem necessary, expedient, or appropriate. Surety's decision with respect to all subject matters related to this Section, shall be binding on Principal and all Indemnitors. Surety shall have the right, but not the obligation, to provide prior notice of any Settlement to Principal and Indemnitors.

*Id.* at 5. The agreement also expressly entitled Allied World to charge Defendants for the amount of loss payments made by Allied World:

> In the event of any Loss payment by Surety, Indemnitors further agree that in any accounting between Surety and Indemnitors, Surety will be entitled to charge for any and all disbursements made by it in good faith concerning the matters contemplated in this Agreement under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments Surety made will be prima facie evidence of the fact and amount of Surety's liability.

*Id.* After Defendants signed the indemnity agreement, Allied World issued bonds for two different projects totaling $1,490,719.19 ($995,175.19 and $495,544, respectively). Dkt. 1 at 5. At the time Allied World filed its complaint, it alleged that it had received numerous claims on the payment bonds because Defendants were not making payments to their subcontractors and suppliers. *Id.* At that time, one obligee (from the $495,544 bond) had filed a performance bond claim. *Id.* After Allied World filed suit, another obligee (from the $995,175.19 bond) also brought a performance bond claim against Allied World. Dkt. 15 at 2. Allied World has since settled that claim. Dkt. 28. Allied World claims $1,209,034.07 in total damages. *Id.*

When Allied World determined that it was exposed to a potential loss, it demanded that Defendants post $1,200,000 in collateral under the indemnity agreement. Dkt. 1 at 5. Defendants

2

did not comply, so Allied World brought this suit for breach of the indemnity agreement, specific performance of the indemnity agreement, and for exoneration/collateralization so that Defendants are liable for any loss or anticipated loss by Allied World. *Id.* at 6–7. The court has since granted Allied World's request for specific performance, and Defendants were ordered to post $1,200,000 in collateral with Allied World. Dkt. 17. Allied World now moves for summary judgment on its claim for breach of the indemnity agreement. Dkt. 21.

In response to the summary judgment motion, Defendants argue only that fact issues preclude judgment on three of their six affirmative defenses. Dkt. 23. Defendants contend that summary judgment is improper because: (1) it was objectively impossible for Defendants to perform the contract; (2) Allied World's damages were caused by third parties, not Defendants; and (3) Allied World failed to mitigate its damages. *Id.*

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

Because this is a diversity case, the court applies state law rules on contract construction. *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001). To prevail on a breach of indemnity agreement claim under Texas law, a plaintiff must establish that:

(1) a contractual indemnity agreement exists;

(2) the indemnity agreement obligates one party to indemnify the other for particular claims;

(3) those claims were made;

(4) all conditions precedent for recovery have occurred or been waived or excused; and

(5) the party seeking relief has been damaged.

*Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995). When the terms of an indemnity agreement are clear and unambiguous, Texas law gives effect to the agreement as written. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983).

Allied World provides evidence for each element of its claim, and Defendants do not dispute the merits of the claim. Dkt. 23. Instead, Defendants argue that fact issues on three of their affirmative defenses preclude summary judgment in Allied World's favor. *Id.* The court will consider each defense in turn.

### A. Impossibility

Defendants first argue that impossibility of performance excuses their breach of contract. *Id.* at 6. Defendants contend that third parties prevented Defendants' performance on the bonded projects, which prevented Defendants from completing the projects and caused Allied World to receive claims on the performance bonds. *Id.* at 6–7. Because the third parties prevented Defendants

4

from performing on their underlying construction contracts, Defendants argue that they are excused from their breach of the indemnity agreement with Allied World. *Id.*

However, Defendants' argument fails on two counts. First, Defendants do not argue that the third parties' intervention caused performance of the *indemnity agreement* to be impossible. Rather, Defendants argue that the third parties' conduct prevented Defendants' performance of the underlying construction contracts. Defendants' inability to perform under the construction contracts has no legal impact on Defendants' obligations under the indemnity agreement because the indemnity agreement is a separate contract.

Second, even if third parties had prevented Defendants from performing the indemnification agreement, Defendants' breach would not be excused. Under Texas law, objective impossibility—"the thing cannot be done"—is due to the impossible nature of the promise and excuses a breach of contract. *Grayson v. Grayson Armature Large Motor Div., Inc.*, No. 14-09-00748-CV, 2010 WL 2361432, at *5 (Tex. App.—Houston [14th Dist.] June 15, 2010, no pet.); *see also Janak v. FDIC*, 586 S.W.2d 902, 906 (Tex. App.—Houston [1st Dist.] 1979, no pet.). However, subjective impossibility—"I cannot do it"—is due to the inability of the individual promissor to perform and does not excuse a breach. *Grayson*, 2010 WL 2361432, at *5; *Janak*, 586 S.W.2d at 906. Here, Defendants' promise to indemnify was not objectively impossible simply because Defendants were prevented from completing the bonded construction projects. The third parties' refusal may have made it financially more difficult for Defendants to perform the indemnification agreement. However, such difficulty is due only to Defendants' individual inability to pay and thus falls within the realm of subjective impossibility. Defendants' impossibility defense therefore fails.

## B. Damages Caused by Third Parties

Second, Defendants argue that "responsibility for any damages sustained by Allied World should be apportioned among all relevant nonparties whose fault contributed to [Allied World's] alleged damages." Dkt. 23 at 7. However, this argument also fails. Under the indemnity agreement, Defendants agreed to indemnify Allied World for losses incurred from the bonds. Dkt. 6-2 at 3 ("Each Indemnitor hereby agrees and covenants with the Surety . . . at all times jointly and severally to exonerate, indemnify and keep indemnified, and to defend and to hold Surety harmless from and against any and all liability for any and all Loss . . . "). Defendants cite no law for the proposition that the court should rewrite the terms of their contract in order to apportion fault to third parties. *See* Dkt. 23 at 7–8. As between Allied World and Defendants, the indemnity agreement places the risk of loss on Defendants. Defendants are therefore responsible for recovering their own losses from responsible third parties.

## C. Failure to Mitigate

Finally, Defendants contend that Allied World failed to mitigate its damages because: (1) defendant Michael Vivian believes that Allied World should have paid less on the bond claims; and (2) Allied World failed to perform an "independent calculation of damages or investigation of the claim." Dkt. 23 at 8–9. However, both of these arguments are also unavailing.

First, Defendants argue that Vivian's testimony creates a fact issue as to the proper amount of damages. Vivian testified that Allied World made payments on the performance bonds that were "well above what was actually owed." *Id.* at 8. Vivian also disputes several other payments by Allied World in connection with the bonded projects. *Id.* at 9. However, the indemnity agreement expressly provides that Allied World has the "exclusive right in its name or in the name of [Defendants] to adjust, settle, or compromise any Claim, counterclaim, demand, suit or judgment involving any Bond . . . [Allied World's] decision with respect to all subject matters related to this

6

Section, shall be binding on [Defendants]." Dkt. 6-2 at 5. Further, Allied World is "entitled to charge [Defendants] for any and all disbursements made by it in good faith" concerning the bonds, "whether or not such liability, necessity or expediency existed." *Id.* Thus, Vivian's testimony about what he believes Allied World should have paid is irrelevant under the parties' indemnity agreement. As before, Defendants' argument amounts to a claim that Defendants are not bound by the bargained-for terms of the parties' contract.[1]

Second, Defendants argue that Allied World failed to mitigate its damages because it did not conduct a sufficient investigation of the claims. Dkt. 23 at 9. Defendants' argument appears to rest on the provision of the indemnity agreement that only entitles Allied World to reimbursement of payments made "in good faith." Dkt. 6-2 at 5. However, under Texas law, "good faith" in an indemnity agreement "refers to conduct which is honest in fact, free of improper motive or wilful ignorance of the facts at hand. It does not require proof of a 'reasonable' investigation by the surety." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285 (Tex. 1998). Defendants do not argue that Allied World was willfully ignorant or had improper motives in settling the claims at issue.[2] The indemnity agreement gives Allied World the exclusive right to settle claims in order to avoid the very issue about which Defendants are now complaining. Defendants' failure to mitigate defense therefore fails.

---

[1] Texas courts often impose an additional requirement that sureties' settlements with third parties be "reasonable, prudent and in good faith under the circumstances." *See, e.g., Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 824 (Tex. 1972), *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987); *see also Transamerica Ins. Co.*, 66 F.3d at 721 n.15. However, the indemnification agreements in those cases did not expressly grant the right of settlement to the surety. Here, where the surety is given express authority to settle claims in good faith, the surety's discretion is "limited only by the bounds of fraud." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998) (citations omitted).

[2] Defendants also contend that Allied World's amendment of its damages model is evidence of failure to mitigate. Dkt. 23 at 9–10. However, Allied World's mistake was due to an accounting error, not a failure to mitigate. Dkt. 22. Moreover, Allied World's corrected calculation results in a significantly lower damages claim against Defendants. *Id.*

**D. Damages**

The indemnification agreement provides that "vouchers or other evidence" of Allied World's loss amount "will be prima facie evidence of the fact and amount" of Defendants' liability. Dkt. 6-2 at 5. Allied World's evidence shows a total loss amount, including attorney's fees, of $1,209,034.07. Dkt. 28; Dkt. 6-2 at 2 (expressly including attorney's fees in Allied World's loss amount); *see also* Dkts. 22 (amended declaration in support of summary judgment), 22-1 (declaration of James Keating), 22-3 (loss ledger).

Allied World also requests prejudgment and post-judgment interest. Dkt. 28; Dkt. 6-2 at 3 (providing that Defendants are liable for interest as part of Allied World's total losses). Post-judgment interest is allowed on any money judgment in a civil case recovered in a district court. 28 U.S.C. § 1961(a). Parties are free to stipulate a rate of post-judgment interest different from the one prescribed in § 1961, as long as the stipulated rate is consistent with state usury and other applicable laws. *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013); *Hymel v UNC, Inc.*, 994 F.2d 260, 266 (5th Cir. 1993). However, the parties' agreement must clearly and unambiguously provide that the contractual rate applies to post-judgment interest. *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 593 F. App'x 300, 306 (5th Cir. 2014). Here, the parties have expressly contracted that Defendants must pay interest at the contractual amount "from the Due Date up to the date of actual payment." Dkt. 6-2 at 3. This language unambiguously includes any post-judgment period of nonpayment. Thus, the contractual interest rate applies post-judgment.

The contractual interest rate is 4% per annum above the Wall Street Journal prime rate on the date payment is due. Dkt. 6-2 at 2. Under the indemnity agreement, payment was due five business days after receipt of Allied World's written demand for payment, and interest began accruing at that time. *Id.* at 2, 3. Allied World formally demanded payment under the indemnity agreement on February 7, 2017, via certified mail return receipt requested, making the due date

February 14, 2017. Dkt. 21-4. The Wall Street Journal prime rate on February 14, 2017 was 3.75%, making the parties' stipulated interest rate 7.75%. *Market Data Center, Bonds, Rates & Credit Markets*, The Wall Street Journal, http://www.wsj.com/mdc/public/page/2_3020-moneyrate-201702 14.html?mod= mdc_pastcalendar. This is below the Texas legal maximum of 18% per year. Tex. Fin. Code Ann. § 304.002. Thus, the court GRANTS Allied World's post-judgment interest at 7.75%.

The recovery of prejudgment interest is a substantive question controlled by state law. *Wood v. Armco, Inc.*, 814 F.2d 211, 213 n.2 (5th Cir. 1987). A prevailing plaintiff in a contract case governed by Texas law is entitled to an award of prejudgment interest "in all but exceptional circumstances." *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987); *see also, e.g.*, *Joy Pipe, USA, L.P. v. ISMT Ltd.*, 703 F. App'x 253, 257 (5th Cir. 2017) (per curiam) (reiterating the Fifth Circuit's interpretation that Texas law requires equitable prejudgment interest "as a matter of course, absent exceptional circumstances"). Because the parties have stipulated as to the interest rate, the court GRANTS Allied World's prejudgment interest at 7.75%. *See* Dkt. 6-2 at 2.

Finally, Allied World requests an award of court costs. Upon entry of judgment, costs should be awarded to the prevailing party. *See* Fed. R. Civ. P. 54(d)(1). Parties must maintain their own record of taxable costs. S.D. Tex. L.R. 54.2. The prevailing party must apply for costs by filing a bill of costs within 14 days of the entry of a final judgment. *Id.* The indemnity agreement expressly provides that Allied World is entitled to court costs. Dkt. 6-2 at 3. Under the terms of the contract and the Federal Rules of Civil Procedure, the court GRANTS Allied World all court costs.

## IV. CONCLUSION

Allied World's motion for summary judgment is GRANTED. The court hereby awards Allied World the following:

(1) judgment in the amount of $1,209,034.07;

(2) prejudgment interest at the contractual rate of 7.75% per annum from and after February 14, 2017, until entry of judgment;

(3) post-judgment interest at the contractual rate of 7.75% as provided by law from entry of judgment until paid; and

(4) all costs of court as provided by law.


Signed at Houston, Texas on December 17, 2018.

_____
Gray H. Miller
United States District Judge